277 P.3d 889 (2012)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of R.D., R.D., C.L., and D.L., Children, and
Concerning K.L. and A.J.D., Respondents-Appellants.
No. 11CA1347.
Colorado Court of Appeals, Div. I.
March 1, 2012.
*891 William Louis, County Attorney, Laura C. Rhyne, Deputy County Attorney, Colorado Springs, Colorado, for Petitioner-Appellee.
Elizabeth Hoover, Guardian Ad Litem.
Davide C. Migliaccio, Colorado Springs, Colorado, for Respondent-Appellant K.L.
William G. Webb, P.C., William G. Webb, Colorado Springs, Colorado, for Respondent-Appellant A.J.D.
Opinion by Judge TAUBMAN.
¶ 1 In this dependency and neglect case, A.J.D. (father) appeals from the judgment terminating the parent-child relationship between him and his children, R.D. and R.D. Because we conclude that father was denied his statutory right to counsel at the hearing concerning the termination of his parental rights, and that this violation is not subject to harmless error review, we vacate the judgment terminating father's parental rights and remand the case for further proceedings.
¶ 2 K.L. (mother) also appeals from the judgment terminating the parent-child relationship between her and her children, R.D., R.D., C.L., and D.L. Because the evidence supports the trial court's termination of her parental rights, we affirm the judgment terminating her parental rights.

I. Background
¶ 3 The El Paso County Department of Human Services (Department) filed a dependency and neglect petition and assumed protective custody of the children after law enforcement officials assisting in the eviction of the family from its home for nonpayment of rent discovered unlivable conditions marked by the presence of multiple animals, a strong smell of feces, scattered clothes and debris throughout, mold on the windowsills and walls, and evidence of marijuana use. R.D., the youngest child and the only child then present, was noticeably thin, pale, and extremely unkempt.
¶ 4 Mother and father admitted to the petition and the children were adjudicated dependent and neglected. A treatment plan, adopted with the agreement of all parties, required mother and father to engage in *892 consistent visitation, maintain safe and stable housing and income, address any issues identified by a global evaluation, participate and successfully complete all necessary family preservation and life skill services, cooperate with the Department and the court, and develop and sufficiently demonstrate parental protective capacity enabling the children to reside in a safe and emotionally healthy home environment.
¶ 5 A year later, the children's guardian ad litem (GAL) moved to terminate mother's and father's parental rights on the grounds that they had failed to reasonably comply with the terms of the treatment plan and that the plan had not rehabilitated them. The court continued the termination hearing after neither mother nor father appeared and ordered that they appear at the next hearing or be found in default.
¶ 6 Although mother was present at the rescheduled termination hearing held a month later, father was unable to attend. Father's counsel explained to the court that he had been detained at work. The court proceeded with the hearing and father's counsel actively participated on his behalf. Two hours later, however, when father had still not appeared, the court found him in default, granted the termination motion as it pertained to him, and ended his counsel's participation over counsel's objection. It then took additional testimony from the therapist who primarily treated mother and also provided couples therapy, and the family's two life skills workers.
¶ 7 When the court reconvened the termination hearing a week and a half later, both mother and father were present. Father, represented by substitute counsel because his attorney was unavailable, requested that the court reconsider its decision to find him in default. The court allowed father to participate and testify. However, when substitute counsel indicated that she was not fully prepared to proceed with the case, the court sua sponte permitted father's former counsel to withdraw based on father's failure to cooperate. Proceeding pro se, father briefly testified but did not present any other evidence, cross-examine the other witnesses testifying that day, including the caseworker, or offer a closing argument.
¶ 8 Ultimately, the court found that the criteria under section 19-3-604(1)(c), C.R.S. 2011, for termination of parental rights had been proved by clear and convincing evidence as to both mother and father: the treatment plan was unsuccessful in rehabilitating both parents, both were unfit, and their conduct was unlikely to change within a reasonable period of time. It found that nothing father presented would change these findings. Its written order acknowledged that father had been permitted to appear pro se on the second day of the hearing, but did not mention the prior finding of default.
¶ 9 The trial court's judgment also terminated the parental rights of S.L., the father of C.L. and D.L. However, he does not appeal.

II. Father's Appeal
¶ 10 Father contends that the trial court violated his statutory and due process rights to counsel when it prohibited his attorney from participating on his behalf and entered default against him on the first day of the termination hearing and sua sponte allowed his counsel to withdraw on the second day of the hearing. We agree that his statutory right to counsel was violated and further conclude that such error requires vacating the termination judgment against him.

A. Statutory Right to Counsel in Termination Hearing
¶ 11 In all dependency and neglect proceedings, a parent possesses the legal right "to be represented by counsel at every stage of the proceedings." § 19-3-202(1), C.R.S.2011. An indigent parent also possesses the right to seek court-appointed counsel to represent him or her. Id.; People in Interest of Z.P., 167 P.3d 211, 213 (Colo. App.2007) (upon timely request). A court must advise the parent of these rights at first appearance. § 19-3-202(1); Z.P., 167 P.3d at 213.
¶ 12 Once a motion for termination of the parent-child relationship is filed, if the parent is not already represented by counsel, the *893 court again must advise the parent of his or her right to counsel. § 19-3-602(2), C.R.S. 2011. Advisement of right to counsel may be done in open court or in writing. Id. The court may appoint counsel for the parent at this point if it finds representation by counsel "necessary to protect the interests of the child or other parties" to the proceeding. § 19-1-105(2), C.R.S.2011; see § 19-3-602(2).
¶ 13 These statutes create a parent's right to counsel in termination hearings. C.S. v. People, 83 P.3d 627, 636 (Colo.2004).
¶ 14 Although this right "is secured by statute and not constitutional mandate," id., the United States Supreme Court and the Colorado Supreme Court have acknowledged that a parent's fundamental liberty interest in a termination proceeding further implicates constitutional concerns. Lassiter v. Dep't of Soc. Services, 452 U.S. 18, 31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (due process may require the appointment of counsel in termination proceedings, determinable on a case-by-case basis); see Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (recognizing that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State"); A.L.L. v. People in Interest of C.Z., 226 P.3d 1054, 1062 (Colo.2010) (parent's right to counsel in a dependency and neglect proceeding is statutory in nature, but termination proceedings "cue constitutional due process concerns"); see also People in Interest of L.B., 254 P.3d 1203, 1206 (Colo.App. 2011) (due process requires that a parent receive the assistance of counsel when a proceeding could result in termination of parental rights).
¶ 15 We need not reach the constitutional question here, however, because we conclude the trial court violated father's statutory right to counsel by effectively dismissing father's counsel on the first day of his termination hearing. See People v. Lybarger, 700 P.2d 910, 915 (Colo.1985) ("a court should not decide a constitutional issue unless and until such issue is actually raised by a party to the controversy and the necessity for such decision is clear and inescapable").
¶ 16 After commencing the termination hearing, in the absence of father but with his counsel present and participating, the trial court found father in default and granted the motion to terminate his parental rights. It also indicated on the first day of the hearing that it was dismissing his counsel, over her objection, stating: "You are free to leave or stay as you wish, [counsel]. I am not going to allow you to inquire any further." For the remainder of the first day of the termination hearing, including during the testimony implicating father's fitness by the therapist and the family's two life skills workers, father was thus deprived of his right to assistance of counsel.
¶ 17 No statutory exception exists here to permit such a deprivation of this right. The trial court's means of effectively dismissing counsel in these circumstances, by entering default against father, was contrary to C.R.C.P. 55. See Rombough v. Mitchell, 140 P.3d 202, 204 (Colo.App.2006) (when a defendant answers and actively litigates but fails to appear for trial, the trial court may receive evidence in the defendant's absence and render judgment on the merits, but it may not enter an order of default); Kielsmier v. Foster, 669 P.2d 630, 632 (Colo.App.1983); cf. People in Interest of V.W., 958 P.2d 1132, 1134 (Colo.App.1998) (default judgment terminating father's parental rights upheld when father did not request an appointed attorney until after his parental rights had been terminated).
¶ 18 The trial court's conduct further contravened the statutory scheme of title 19, article 3 described above, in which a parent in a dependency and neglect proceeding is afforded more due process protection than litigants in other civil contexts. See also People in Interest of C.G., 885 P.2d 355, 357 (Colo.App.1994) (parent's appearance at termination hearing was not required where he was represented by counsel at that hearing and able to present testimony by deposition or affidavit).
¶ 19 Nor did the trial court cure this error when the hearing reconvened. Its prior *894 decision, on the record, to terminate father's rights and disallow counsel's active participation in the hearing may well have influenced whether father's substitute counsel believed she would be able to participate in the hearing on the second day. Indeed, she stated she was not prepared to proceed, except for the limited purpose of introducing father and assisting him to testify if needed. The trial court then sua sponte directed that father's counsel of record was "allow[ed] to withdraw based on [father]'s failure to cooperate." The trial court permitted father to testify and participate pro se in the proceeding and reserved deciding "whether anything [he] said would reverse the court's previous ruling" of default against him. Subsequently, the record is devoid of any participation by father's counsel and, apart from his own brief testimony, by father.
¶ 20 Based on these relevant facts, we conclude that father was also deprived of assistance of counsel on the second day of his termination hearing.
¶ 21 Because no party contends that father waived his right to counsel, we also do not consider his failure to appear on the first day of the termination hearing, his failure to object to the effective withdrawal of his counsel, or his decision to testify as a voluntary waiver of his right to representation. See People in Interest of M.G., 128 P.3d 332, 334 (Colo.App.2005) (waiver of statutory right to counsel must be voluntary).
¶ 22 Accordingly, the trial court violated sections 19-3-202(1) and 19-3-602(2) when it deprived father of his right to the assistance of counsel during substantial parts of the termination hearing.

B. Deprivation of Counsel at Termination Hearing Not Subject to Harmless Error Analysis
¶ 23 Colorado appellate courts have not determined the appropriate standard of review for violation of the statutory right to counsel in dependency and neglect proceedings.[1] Because father, the Department, and the GAL did not address in the petition for review or the responses the standard of review that would apply in the event that we concluded that father's statutory right to counsel had been denied, we requested that the parties submit supplemental briefs on whether that standard should be structural error, harmless error, or some other standard.
¶ 24 Upon review of those supplemental briefs, we now conclude that the denial of father's statutory right to counsel was reversible error per se under the circumstances presented here.
¶ 25 Under Colorado law, error in a civil case is harmless if it did not affect a substantial right of a party. C.R.C.P. 61. "An error affects a substantial right only if `it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'" Bly v. Story, 241 P.3d 529, 535 (Colo.2010) (quoting Banek v. Thomas, 733 P.2d 1171, 1178 (Colo.1986)).
¶ 26 We conclude that it is not appropriate to review the denial of a respondent parent's statutory right to counsel under a harmless error standard. This is so because the absence of counsel for a substantial part of a termination of parental rights hearing is not susceptible of analysis to determine whether the deprivation of counsel either significantly influenced the outcome of the case or impaired the basic fairness of the termination hearing. In an ordinary case, a court can normally review a trial error, such as the improper admission or exclusion of evidence, to determine whether such error impacted the outcome of the trial or affected its basic fairness.
¶ 27 In contrast, when the issue is a violation of a respondent parent's statutory right to counsel, it is much more difficult, if not impossible, to make such determinations. Once a respondent parent's counsel has been *895 dismissed, it is unreasonable to require or expect a self-represented parent to make an offer of proof explaining what information or evidence would have been presented had the attorney still been present. Further, while the record may demonstrate significant evidence of father's failure to comply with his treatment plan, as well as other deficiencies, it is impossible to know what difference the presence of his attorney might have made in cross-examining the GAL's witnesses, or presenting testimony on his behalf. Additionally, while father testified on his own behalf on the second day of the hearing, he did so without benefit of counsel, and without a proper awareness of what testimony might have been most helpful to his efforts to oppose the GAL's motion[2] to terminate his parental rights.
¶ 28 Thus, we conclude that the harmless error standard is not appropriate under these circumstances.
¶ 29 At the same time, we disagree with father's contention that we should follow those jurisdictions that have applied a structural error standard in these circumstances.
¶ 30 Some jurisdictions have found "structural" error, which is not susceptible to a harmless error analysis, in the context of parental termination proceedings. See In re Adoption of B.J.M., 42 Kan.App.2d 77, 209 P.3d 200, 207 (2009) (denial of due process by failing to provide for incarcerated father's presence at a stepparent adoption hearing); In re Torrance P., 298 Wis.2d 1, 724 N.W.2d 623, 635 (2006) (denial of statutory right to counsel in a termination of parental rights proceeding). However, neither the Colorado Supreme Court nor the United States Supreme Court has recognized the concept of structural error in civil cases. See Black v. Sw. Water Conservation Dist., 74 P.3d 462, 473 (Colo.App.2003); see also Washington v. Recuenco, 548 U.S. 212, 218-19, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006). "Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. In such cases, the error `necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" Recuenco, 548 U.S. at 218-19, 126 S.Ct. 2546 (footnote omitted) (quoting Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).
¶ 31 Because neither the United States Supreme Court nor the Colorado Supreme Court has extended the structural error analysis to civil cases, we do not do so here.
¶ 32 Nevertheless, we conclude that the erroneous denial of the respondent parent's right to counsel during a substantial part of a parental rights termination hearing requires application of an automatic reversible error standard. See Rivera v. Illinois, 556 U.S. 148, 161-62, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009) (absent a federal constitutional violation, states retain the prerogative to decide whether errors require automatic reversal or rank as harmless under state law).
¶ 33 We recognize that determining whether a parent has been deprived of his or her right to counsel during a "substantial" part of a parental rights termination hearing is not a precise calculation. However, courts regularly apply "substantial" standards in various contexts that permit case-by-case determinations. See, e.g., People v. Hall, 999 P.2d 207, 217 (Colo.2000) (under § 18-1-501(8), C.R.S. 2011, a person acts recklessly if his or her conduct creates a "substantial and unjustifiable risk"); Woodsmall v. Reg'l Transp. Dist., 800 P.2d 63, 69 (Colo.1990) (interpreting Colorado Governmental Immunity Act notice of claim statute, § 24-10-109(1), C.R.S.2011, to require "substantial compliance"); Hall v. Frankel, 190 P.3d 852, 858 (Colo.App.2008) (under section 13-64-401, C.R.S.2011, a physician testifying as an expert must demonstrate a "substantial familiarity" with the subject medical specialty).
¶ 34 Here, the record does not reveal the percentage of time during which father was unrepresented at the hearing. However, father was deprived of his right to counsel during a substantial part of the termination hearing, whether measured qualitatively or quantitatively. Qualitatively, father did not *896 have counsel to represent him at all for his own case nor in response to the case against him presented by the GAL and the Department. Father testified briefly on his own behalf, but did so with the admonition that it would reserve deciding whether any of father's testimony would reverse the trial court's previous default ruling against him. Further, it is apparent from a review of the record that father was unfamiliar with judicial proceedings, including the opportunity to present witnesses on his own behalf. In addition, during the first day of the termination hearing, the therapist and two life skills workers testified against father after his counsel had been prohibited from inquiring further; thus, these witnesses were not subjected to cross-examination by father's attorney (or by father himself).
¶ 35 Quantitatively, the record shows that father was deprived of his right to counsel for a substantial portion of the termination hearing. In terms of transcript pages, father was unrepresented during more than eighty percent of the parental rights termination hearing. (We recognize, of course, that a significant portion of the hearing involved the case against mother, but if father had had counsel for the entire termination hearing, presumably his counsel would have been present for all of the proceedings involving termination of mother's parental rights.)
¶ 36 In these circumstances, we can safely conclude that father was deprived of his right to counsel for a substantial part of the parental rights termination hearing.
¶ 37 A majority of other jurisdictions addressing the issue have concluded that the violation of a respondent parent's statutory or constitutional right to counsel in a termination of parental rights hearing is either reversible error per se or structural error. See In Interest of J.B., 624 So.2d 792, 792 (Fla.Dist.Ct.App.1993) (even though parent was represented by counsel at later proceedings, failure to advise parent of right to counsel at the original dependency adjudication proceeding "cannot be deemed harmless error since the dependency adjudication was used as a basis of the adjudication of the permanent termination of appellant's parental right"); In Interest of J.M.B., 296 Ga. App. 786, 676 S.E.2d 9, 12 (2009) (finding structural error, court holds that "the total and erroneous denial of appointed counsel during the termination hearing is presumptively harmful because it calls into question the very structural integrity of the fact-finding process"); State v. Doe, 123 Idaho 562, 850 P.2d 211, 215 (App.1993) (where mother did not have appointed counsel for first part of termination hearing, court declined to apply harmless error standard, noting that it need not decide whether any evidence from first part of hearing was improperly admitted or whether evidence from second part of hearing was sufficient to support court's termination order); R.V. v. Commonwealth, 242 S.W.3d 669, 673 (Ky.Ct.App.2007) (due process and state statute prohibit termination of parental rights unless parent has been represented by counsel at every critical stage of underlying dependency proceeding; exception applies when it can be shown that dependency proceeding without counsel had "no effect" on subsequent termination case); In re Keifer, 159 Mich.App. 288, 406 N.W.2d 217, 219 (1987) (where attorney for father not appointed until after evidentiary hearings, court rejected harmless error analysis, declaring it "inappropriate to address the issues of whether sufficient evidence was introduced to support the order terminating respondent's rights or whether adequate factual findings were placed on the record"); In re A.S.A., 258 Mont. 194, 852 P.2d 127, 129-30 (1993) (where counsel not appointed for parent until the end of the termination hearing, parent's constitutional right to due process was violated and district court's termination judgment was reversible error); In re Adoption of K.A.S., 499 N.W.2d 558, 567 (N.D.1993) (court held that trial court's failure to appoint counsel to represent father was not harmless error, but noted that it was skeptical that denial of counsel to an indigent parent in an adoption proceeding which results in termination of parental rights could ever be harmless); In re S.S., 90 P.3d 571, 575-76 (Okla.Civ.App.2004) (neither showing of prejudice nor harmless error applies when parent deprived of right to counsel in termination of parental rights proceeding); In re Adoption of R.I., 455 Pa. 29, 312 A.2d 601, 602 (1973) (appointing counsel for parent after *897 the termination of parental rights hearing was insufficient, constituted a violation of due process rights, and warranted reversal); Torrance P., 724 N.W.2d at 635 (dismissing mother's attorney in termination of parental rights proceeding was prejudicial error per se and required reversal under structural error analysis); see also Williams v. Bentley, 26 A.D.3d 441, 809 N.Y.S.2d 205, 206-07 (N.Y.App.Div.2006) (in custody proceeding, deprivation of a party's fundamental right to counsel is a denial of due process and requires reversal, without regard to merits of unrepresented party's position); but see In re Ronald R., 37 Cal.App.4th 1186, 44 Cal. Rptr.2d 22, 29-30 (1995) (harmless error standard applies to violation of right to counsel when decision made to terminate reunification services and schedule permanency planning hearing); Hughes v. Div. of Family Servs., 836 A.2d 498 (Del.2003) (harmless error analysis applied under three-part due process analysis prescribed by Lassiter); In re P.D.L., 324 Mont. 327, 102 P.3d 1225, 1229 (2004) (court ruled father's Rule 60(b) motion was untimely since it was filed more than two years after he was aware his parental rights were about to be terminated; court also applied harmless error standard to lack of notice of right to counsel); In re J.R.G.F., 250 P.3d 1016 (Utah Ct.App.2011) (applying harmless error standard).
¶ 38 Significantly, one recent commentator has noted that "in situations where a parent is erroneously deprived of counsel at the final TPR [termination of parental rights] hearing, appellate courts have been steadfast in automatically reversing the TPR decision regardless of the merits of the case." Vivek S. Sankaran, No Harm, No Foul? Why Harmless Error Analysis Should Not Be Used to Review Wrongful Denials of Counsel to Parents in Child Welfare Cases, 63 S.C. L. Rev. 13, 33 (Autumn 2011). That commentator also noted that, in contrast, in cases involving deprivation of the right to counsel at hearings before the final termination of parental rights hearing, a large number of appellate courts have employed a harmless error test and have placed the burden on parents to demonstrate how the earlier appointment of counsel would have changed the outcome in the case. Id. at 15-16; see also Patricia Kussmann, Annotation, Right of Indigent Parent to Appointed Counsel in Proceeding for Involuntary Termination of Parental Rights, 92 A.L.R.5th 379 (2001) (collecting cases).
¶ 39 In conclusion, we hold that given the importance of the statutory right to counsel in termination of parental rights hearings, the deprivation of that statutory right constitutes reversible error per se. However, our holding is limited in its scope. We do not address whether the deprivation of the right to counsel at an earlier stage of a dependency and neglect proceeding is subject to harmless error analysis. See, e.g., People in Interest of J.B., 702 P.2d 753, 755 (Colo.App. 1985) (without discussing whether harmless error standard of review applies, court reversed termination of parental rights when indigent mother's attorney was discharged after denial of department's termination hearing and not reappointed until twenty-one months later, when second motion to terminate parental rights was filed). Nor do we consider whether a brief absence of counsel during a termination of parental rights hearing constitutes reversible error per se. Here, however, where father was deprived of his right to counsel for a substantial portion of the termination of parental rights hearing, application of the reversal per se standard is warranted.[3]

III. Mother's Appeal
¶ 40 Mother contends that the judgment terminating her parental rights is not supported by clear and convincing evidence. We disagree.[4]
¶ 41 To terminate parental rights under section 19-3-604(1)(c), the court must *898 find, by clear and convincing evidence, that (1) an appropriate, court-approved treatment plan has not been complied with by the parent or has not been successful in rehabilitating the parent; (2) the parent is unfit; and (3) the parent's conduct or condition is unlikely to change within a reasonable time. People in Interest of A.J.L., 243 P.3d 244, 251 (Colo.2010).
¶ 42 In addition, the court must consider and eliminate less drastic alternatives before it terminates the parent-child legal relationship. People in Interest of M.M., 726 P.2d 1108, 1122 (Colo.1986); People in Interest of N.A.T., 134 P.3d 535, 538 (Colo.App. 2006). It must also inquire into the child's best interests by giving primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3), C.R.S.2011; People in Interest of C.H., 166 P.3d 288, 289 (Colo.App.2007).
¶ 43 "The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court." People in Interest of D.B-J., 89 P.3d 530, 532 (Colo.App.2004). Accordingly, the court's findings and conclusions will not be disturbed on review if the record supports them. People in Interest of C.A.K., 652 P.2d 603, 613 (Colo.1982).
¶ 44 Clear and convincing evidence is evidence persuading the fact finder that the contention is highly probable, and, although the standard requires proof by more than a "preponderance of the evidence," it is more easily met than the "beyond a reasonable doubt" standard used in criminal proceedings. A.J.L., 243 P.3d at 251.

A. Compliance with the Treatment Plan
¶ 45 Mother argues that she complied with the treatment plan in a number of ways: showing growth in her ability to empathize with the children, progressing in her counseling, being properly prepared for and consistently visiting the children, maintaining contact with the treatment team throughout the case, continuing to work on and revise her clarification letters to the children, accepting accountability for the circumstances that had necessitated the Department's intervention, and demonstrating appropriate parental protective capacity. She also testified that she has a strong bond with the children. The court acknowledged mother's efforts, recognizing that she loved her children, wished that she could provide for their needs, and had attempted to comply with the treatment plan. However, it concluded that she had not reasonably complied and that she continued to demonstrate the same behaviors identified in the treatment plan, including a "strange absence of emotional attachment."
¶ 46 The overwhelming evidence supported these findings. The caseworker testified that mother did not display consistent empathy for the children, that she had been unable to obtain or maintain safe and stable housing, that her employment had been erratic, and that she did not accept full accountability for the situation leading to the children's placement out of the home. The caseworker specifically noted that C.L. and D.L., mother's older children, assumed a parental role in their visits with mother, and that visits with R.D. had to be discontinued because the anxiety and trauma they induced caused R.D. to engage in self-harming behavior. The anxiety and trauma R.D. experienced in connection with the visits was due in part to the sexual abuse C.L. allegedly perpetrated on her approximately three years before and mother's inaction when R.D. told her about it.
¶ 47 Several experts, including the therapists for R.D. and mother, opined that mother's refusal to accept full responsibility for both the abuse and neglect of the children rendered her attempts at clarification wholly inadequate. Mother's therapist also felt that her empathy for the children was waning, at best, and prevented her from safely parenting them.
¶ 48 A parent is responsible for assuring compliance with and the success of the treatment plan. See People in Interest of J.A.S., 160 P.3d 257, 260 (Colo.App.2007). Partial compliance, or even substantial compliance, with a treatment plan may not be sufficient to correct or improve a parent's *899 conduct or condition. See People in Interest of S.M.A.M.A., 172 P.3d 958, 962 (Colo.App. 2007).
¶ 49 Based on this record, we conclude that the GAL and the Department, which supported the termination motion, met the clear and convincing standard and proved that mother did not substantially or successfully comply with most aspects of the treatment plan. Therefore, we will not disturb the court's findings in that regard. See C.A.K., 652 P.2d at 613.

B. Unfit and Unlikely to Change Within a Reasonable Time
¶ 50 We also conclude that the evidence of mother's continued instability and her failure to gain the insight and skills necessary to remediate the conditions that caused the children's removal and prevented her from meeting their basic needs proved that she was unfit. See People in Interest of D.P., 160 P.3d 351, 353 (Colo.App.2007) (an unfit parent is one whose condition or conduct renders him or her unable to give a child reasonable parental care).
¶ 51 Further, despite mother's claims of progress, the evidence showed that her issues were chronic, and both mother's therapist and the caseworker testified that she would not be able to safely parent within a reasonable time. See K.D. v. People, 139 P.3d 695, 700 (Colo.2006) (in determining whether a parent can become fit within a reasonable time, the court may consider whether any changes occurred during the dependency and neglect proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition).

C. Less Drastic Alternatives and Best Interests
¶ 52 Finally, the record establishes, by clear and convincing evidence, that the children, who had been out of the home for approximately nineteen months, urgently needed permanence. R.D. and R.D. had been placed in the same foster home, where they were doing well and had become very bonded to the foster parents, who wanted to adopt them. As for C.L. and D.L., the caseworker testified that their prolonged proceedings had taken a toll on both of them. D.L.'s therapist also testified that D.L. was experiencing depression, which she attributed, in large part, to his being in "limbo." Thus, the permanence each of the children required could only be achieved through a termination of mother's parental rights. See People in Interest of T.E.M., 124 P.3d 905, 910 (Colo.App.2005) (long-term or permanent placement may not be appropriate if it does not provide adequate permanence or otherwise meet a child's needs).
¶ 53 Because mother underwent little change during the course of this case and showed no likelihood of being able to provide adequate care to the children, termination of her parental rights was in their best interests. Accordingly, we conclude that the termination of mother's parental rights was supported by clear and convincing evidence.
¶ 54 The judgment is affirmed as to mother and vacated as to father, and the case is remanded for further proceedings concerning father.
Judge ROMÁN concurs.
Judge BOORAS concurs in part and dissents in part.
Judge BOORAS concurring in part and dissenting in part.
¶ 55 I concur with the portion of the majority opinion that affirms the termination of mother's parental rights. However, I dissent from the portion of the opinion that remands for further proceedings as to father.
¶ 56 The majority finds that the premature dismissal of father's counsel during the termination of parental rights hearing constitutes reversible error per se. Although I agree that the trial court committed error by dismissing counsel before the conclusion of the hearing, I would not apply a bright line reversible error per se rule absent a complete deprivation of the statutory right to counsel. Where there is no complete deprivation of counsel, but rather deprivation for only a portion of such a proceeding, I would apply the ordinary harmless error standard of review, and I would conclude on the particular *900 facts of this case that removal of counsel did not substantially influence the outcome of the case or impair the basic fairness of the trial, and was therefore harmless.

I. Standard of Review
¶ 57 Other jurisdictions vary as to their willingness to apply a harmless error review to the denial of counsel in parental termination proceedings. Additionally, those jurisdictions that reject harmless error review differ as to the rationale. In my view, cases that reverse the termination judgment based on the complete absence of counsel during a termination proceeding should be considered internally consistent with the present case, regardless of the rationale they employ.

A. Complete Absence of Counsel During a Termination Proceeding
¶ 58 Although the majority observes that "[a] majority of other jurisdictions addressing the issue have concluded that the violation of a respondent parent's statutory or constitutional right to counsel ... is either reversible error per se or structural error," it is important to note that most have done so in the context of a complete absence of counsel during the evidentiary portion of a termination proceeding or during an earlier proceeding which was the basis for a termination.[5] E.g., In Interest of J.B., 624 So.2d 792 (Fla.Dist.Ct.App.1993) (total denial of counsel at dependency adjudication which was later used as a basis of subsequent termination of parental right); In Interest of J.M.B., 296 Ga.App. 786, 676 S.E.2d 9, 12 (2009) (total deprivation of counsel at termination hearing was not subject to a harmless error analysis); In re Keifer, 159 Mich.App. 288, 406 N.W.2d 217, 219 (1987) (although parent was later appointed counsel, parent was unrepresented during the two hearings at which evidence was presented); In re A.S.A., 258 Mont. 194, 852 P.2d 127, 129-30 (1993) (counsel was not appointed until after evidentiary portion of termination proceeding had concluded); In re Adoption of K.A.S., 499 N.W.2d 558, 567 (N.D.1993) (complete denial of counsel in a stepparent adoption proceeding that would result in termination of parental rights); In re Adoption of R.I., 455 Pa. 29, 312 A.2d 601, 602 (1973) (appointing post-decree counsel for parent after termination of parental rights hearing was insufficient since parent was without representation at the hearing itself); In re Torrance P., 298 Wis.2d 1, 724 N.W.2d 623, 635 (2006) ("structural error" found where counsel was not allowed to participate in any part of termination hearing because of mother's failure to appear).
¶ 59 The unifying theme in these cases is that the total absence of counsel mandates reversal, whether it is characterized as "structural error," per se reversible error, or simply not harmless error. Like the majority, I agree with the result in those types of cases under a per se reversible error standard, but not under a "structural error" standard, which should be limited to the criminal law. Neither Colorado courts nor the United States Supreme Court has yet extended the concept of structural error to civil cases. See Black v. Sw. Water Conservation Dist., 74 P.3d 462, 473 (Colo.App.2003); see also Washington v. Recuenco, 548 U.S. 212, 218-19, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) ("Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. In such cases, the error `necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'") (footnote omitted) (quoting Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).
¶ 60 The concept of "structural error" was first articulated by the United States Supreme Court in a criminal case as a "defect affecting the framework within which the trial proceeds" so that it defies analysis by "harmless-error standards" and thus, can never be harmless. Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (identifying as structural error the total deprivation of the right to *901 counsel, denial of the right of self-representation, trial before a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, and denial of the right to a public trial).
¶ 61 Characterizing the complete denial of the right to counsel in a criminal case as structural error makes sense because of the myriad aspects of representation implicit in a criminal proceeding. As the United States Supreme Court explained in United States v. Gonzalez-Lopez, 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006), addressing the infringement of the right to counsel of choice:
Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on [the framework of the trial or] on whether it proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.
Id. at 150, 126 S.Ct. 2557.
¶ 62 In contrast, in a civil parental termination proceeding, the role of counsel is more limited. Plea bargaining and other negotiated dispositions do not play a significant role in a termination proceeding, and there is no right to a jury trial in such a proceeding. § 19-3-602(4), C.R.S.2011. The issues for determination generally do not involve contested issues of historical fact, but rather focus on the parents' willingness and ability to provide appropriate care for the child and the existence and suitability of alternative placements. Finally, the ultimate consideration in a termination hearing is the best interests of the child. Because of differences between criminal cases and parental termination proceedings, the United States Supreme Court has ruled that appointment of counsel in termination proceedings is not necessarily required to satisfy due process. Lassiter v. Dep't of Social Servs., 452 U.S. 18, 31, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).
¶ 63 Nevertheless, Colorado has elected to provide a right to counsel in termination proceedings by statute. Certainly, as the United States Supreme Court has recognized, the violation of a statutory right can be deemed reversible error per se as a matter of state law. See Rivera v. Illinois, 556 U.S. 148, 161-62, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009) (absent a federal constitutional violation, states retain the prerogative to decide whether errors require automatic reversal or rank as harmless under state law).
¶ 64 It appears that Colorado has not yet specifically branded any statutory violation "reversible error per se" pursuant to Rivera. Because assessing prejudice resulting from the complete denial of statutory counsel is difficult, if not impossible, a bright line reversible error standard for complete denial of the statutory right may be appropriate. However, the standard of review for a complete denial of the right to counsel need not be decided here, since this case involved partial representation by counsel, and is therefore much more amenable to a determination of harm.

B. Partial Denial of Counsel
¶ 65 In this case, father was represented by counsel for part of the termination proceedings. Only three of the cases cited by the majority involved counsel's absence for part of a termination hearingand it is not clear that these three cases precluded a harmless error analysis, even though each ultimately found that reversal was required. First, in State v. Doe, 123 Idaho 562, 850 P.2d 211, 215 (App.1993), the mother was not represented by counsel in what appeared initially to be a voluntary termination of parental rights proceeding. After the mother made statements that indicated that any termination *902 would not be voluntary, the court heard the testimony of several witnesses and a statement by the mother. Because of concerns about the mother's mental capacity and competence, the court then belatedly appointed counsel for the mother for a final day of testimony. Even though the trial court stated that it based its termination decision only on evidence adduced during the last day of the hearing, the appellate court found that the failure to appoint statutorily required counsel in these circumstances violated the mother's "due process rights."[6] Finding reversible error in this due process violation, the court did not "decide whether any evidence from the first hearing was improperly admitted or whether the evidence from the second hearing was sufficient to form the basis of the court's order to terminate the mother's parental rights." Id.
¶ 66 Similarly, in A.P. v. Commonwealth, 270 S.W.3d 418, 421 (Ky.Ct.App.2008), the mother's counsel did not appear because of inclement weather and the court proceeded with the first day of a termination hearing. On the second day of the hearing, counsel was present, additional witnesses testified, and counsel was given the opportunity to review videotapes of the witnesses who had testified in his absence. On appeal, the appellate court concluded that denial of the mother's statutory right to counsel violated due process and required reversal. Although the appellate court did not specifically state whether it was applying a harmless error analysis, the court noted the discomfort expressed by the government's counsel and the guardian ad litem about proceeding in the absence of the mother's counsel. It also stated that "[a]nother concern seen on the record" was the failure to sequester certain witnesses. Id. The court concluded, "We cannot say that the failure of the mother's counsel to be present on the scheduled day of the trial during the testimony of the first two witnesses made no difference in the family court termination proceeding."[7]Id.
¶ 67 Finally, in In re S.S., 90 P.3d 571 (Okla.Civ.App.2004), because appointed counsel elected not to appear, the mother was required to represent herself for approximately half of the trial, and then proceeded with an unprepared substitute for the remainder of the trial. Although the Oklahoma court stated that the deprivation of court-appointed counsel during a crucial portion of the trial was "presumptively prejudicial," the court also observed that substitute counsel was completely unfamiliar with the case when she arrived and was only allowed a few minutes to prepare. These circumstances, in effect, amount to total deprivation of counsel rather than representation by counsel for part of the proceedings, and thus, S.S. should not be treated as a partial denial case.
¶ 68 In some criminal law contexts, denial of counsel for only part of a "critical stage" of a case can require automatic reversal. However, this result is not based on the impossibility of assessing harm due to the pervasiveness of a "structural" error, but rather on the importance of the Sixth Amendment right to a fair trial. See United States v. Cronic, 466 U.S. 648, 659-60, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); Geders v. United States, 425 U.S. 80, 86, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (a trial court order that prevented a criminal defendant from consulting his attorney during a seventeen-hour overnight recess required reversal without a showing of prejudice because it deprived him of his Sixth Amendment right to counsel).
¶ 69 By its plain language, the Sixth Amendment right to counsel applies only to *903 "criminal prosecutions." U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence." (emphasis added)). Because no Sixth Amendment right to counsel is implicated in a parental rights termination proceeding, the criminal law "critical stage" concept should not apply to partial denial of the statutory right to counsel in a parental rights termination proceeding. See In re Welfare of G.L.H., 614 N.W.2d 718, 722 (Minn.2000) (declining to equate statutory right to counsel in termination of parental rights proceeding with constitutional right to counsel in criminal prosecution).
¶ 70 In parental rights termination proceedings, the liberty of a criminal defendant is not at stake; instead, these proceedings place primary importance on the best interests of the child. See § 19-3-604(3), C.R.S. 2011 (court must give primary consideration to the physical, mental, and emotional conditions and needs of the child in deciding whether to terminate parental rights). Because of this different balance of interests, the statutory right to counsel in a parental termination case, while deserving of protection, does not require that partial denial of that right should be reversible error per se. Instead, error short of a complete denial of counsel should be subject to a harmless error analysis to determine if, in the context of the individual case, the outcome of the proceeding would have been different, absent the error. See Manuel M. v. Arizona Dep't of Econ. Sec., 218 Ariz. 205, 181 P.3d 1126, 1137 (App.2008) (harmless error where attorney represented father, who was absent without explanation, in parental termination proceedings, but court denied right to assistance by counsel when it would not allow counsel to cross-examine a witness about the sufficiency of the evidence to support grounds for the termination of parental rights); In re Nalani C., 199 Cal.App.3d 1017, 245 Cal.Rptr. 264 (1988) (harmless error by trial court in parental termination proceeding in dismissing mother's attorney when mother failed to appear on first day of termination hearing). Indeed, some jurisdictions engage in a harmless error analysis in parental rights termination proceedings, even when a complete denial of the statutory right to counsel occurred. See In Interest of J.R.G.F., 250 P.3d 1016, 1018 (Utah Ct.App.2011) (error in failing to inform parents of their statutory right to appointed counsel in a parental termination case and denial of their mid-trial request for appointed counsel was deemed harmless where parents failed to show that outcome would have been different); In re P.D.L., 324 Mont. 327, 102 P.3d 1225, 1229 (2004) (although court erred by failing to advise father of right to counsel in termination of parental rights proceeding, error was harmless where outcome would have remained the same).
¶ 71 The majority rejects harmless error analysis in favor of a reversible error per se standard for two reasons that appear to import the criminal law concepts discussed above: (1) the importance of the right to counsel; and (2) the difficulty (or impossibility) of assessing the effect of the lack of the assistance of counsel on the fairness of the trial.
¶ 72 Significantly, although relying on the importance of counsel, the majority is unwilling to deem every absence of counsel from a termination hearing reversible error per se. Instead, the majority limits automatic reversible error to cases where counsel has been absent for "a substantial part" of a termination hearing, but does not define what constitutes a "substantial part." I agree that the amount of time counsel was absent here was not "minimal." My position is simply that the amount of time that counsel was absent from a hearing and the substance of the testimony that was elicited during the absence should be relevant considerations in a harmless error analysis, but are too amorphous to trigger a bright line rule. Instead, in the statutory context, the importance of the right to counsel should be the basis for bright line per se reversible error only where counsel has been totally denied during the relevant proceeding. In other situations, it may be possible to determine the absence of prejudice from the content of the existing record and totality of circumstances in the case.

*904 II. Harmless Error Analysis
¶ 73 Under Colorado law, error in a civil case is harmless if it did not affect a substantial right of a party. C.R.C.P. 61. "An error affects a substantial right only if `it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'" Bly v. Story, 241 P.3d 529, 535 (Colo.2010) (quoting Banek v. Thomas, 733 P.2d 1171, 1178 (Colo.1986)).
¶ 74 Here, father's right to due process and a fair proceeding under the standards set out in Lassiter was not violated by the premature dismissal of his attorney. See Lassiter, 452 U.S. at 32, 101 S.Ct. 2153 (parental termination proceedings were not fundamentally unfair where petition contained no allegations upon which criminal charges could be based, no expert witnesses testified, case presented no specially troublesome points of law, and presence of counsel could not have made a determinative difference for parent). The petition for termination did not allege abuse or neglect that would support criminal charges. Father was represented by counsel during the presentation of a police officer's testimony about the unsanitary condition of the home where the children had lived, and expert testimony about the trauma of the older of the two daughters, which had been caused by "severe neglect and abuse by the bio[logical] parents." Also, it does not appear that the case presented any particularly troublesome points of law. Finally, father was permitted to participate in the portions of the hearing he chose to attend, albeit without the guidance of counsel at that point.
¶ 75 Although the majority contends that the absence of counsel in this case is not susceptible to harmless error analysis, I believe that the record in this particular case can be reviewed for harmless error. That review does not rest on any requirement that self-represented parents must make an offer of proof explaining what evidence or testimony would have been presented had the attorney been there.
¶ 76 While the majority asserts that it is "impossible to know" what testimony an attorney would have presented on father's behalf, the record contains a list of witnesses filed by father's attorney prior to the termination hearing. The list included the names of witnesses that father anticipated calling at the termination hearing and a brief synopsis of their expected testimony.[8] Four of the five witnesses listed were called by the guardian ad litem in the case-in-chief. Father's attorney cross-examined two of these four witnesses before she was dismissed, and mother's attorney cross-examined all four on behalf of mother.[9] Neither attorney's cross-examination provided any challenge to the grounds for termination that were later articulated by the trial court.
¶ 77 Additionally, it appears that no basis for challenge existed since the failure of mother and father to obtain housing was admitted by mother in her testimony, assisted by counsel. Although unassisted by counsel, father also admitted that he had failed to complete the treatment plan requirement of parenting classes and had not obtained suitable housing.
¶ 78 Specifically, father frankly admitted that he had not fully complied with the treatment plan. He acknowledged that his employment had been "sporadic at best, until recently." He also admitted that, although he had attended group and individual therapy, his attendance at the parenting classes had been "sporadic, at best." Finally, father agreed that in the eighteen months the case had been pending, he only had a home that was suitable for the children during a brief period around October 2010. For the majority of the time the case had been pending, he had been living either in his car or with a friend, and at the time of the May 2011 *905 termination hearing, he was living with a friend.
¶ 79 These admitted facts were the specific basis for the trial court's decision to terminate father's parental rights. Initially, the court noted that because the children had been in out-of-home placement for fifteen of the last twenty-two months, it was presumed that termination was the appropriate outcome. See § 19-3-604(2)(k), C.R.S.2011. However, apart from the presumption in favor of termination, the court found that the inability of the parents to provide a safe home was the "bottom line." In addition to the failure to provide safe and stable housing for the children, the trial court found that neither parent had complied with the treatment plan:
[W]hile the parties have testified that in the hopefully near future they will have an environment which would allow them to parent these children, there is certainly no evidence before the Court that the Court deems reliable that, in fact, that is true or can overcome the many other difficulties which exist in this case. [Father] has been sporadic in his participation in this case by his own words, and has been sporadic in his attendance to the court. [Mother], I think, has been attempting to be in compliance, but for whatever reasons and I have not heard any evidence that she is not capable of obtaining full-time employment to add to the financial ability of this family to support these children, instead appears to work when it suits her.
¶ 80 The court stated that it considered the evidence that termination is the appropriate outcome "overwhelming."
¶ 81 In a case remarkably similar to the instant case, In re Nalani C., the California Court of Appeal found harmless error in the dismissal of a mother's attorney in violation of the mother's statutory right to counsel when the mother failed to appear for a termination of parental rights proceeding. Nalani C., 245 Cal.Rptr. at 272. The California court concluded that "the proper procedure would have been for the court not to have relieved [the attorney] and to have conducted the trial with the attorney representing [the mother] to the best of his ability under the circumstances," but found that there was no prejudice since no errors were committed in the attorney's absence and sufficient evidence supported the judgment. Id.
¶ 82 The factors supporting a finding of "no prejudice" in Nalani C. are present in the instant case, as well as the additional factors discussed above: (1) the assistance of father's counsel during the testimony of the initial three witnesses; (2) the representation of mother by mother's counsel during the entirety of the proceedings; and (3) the opportunity for father to testify on the second day of the hearing. These circumstances present an even stronger basis than that in Nalani C. for concluding that the error in prematurely dismissing father's attorney was harmless here.
¶ 83 Thus, I would conclude that, although the trial court committed error by dismissing counsel before the conclusion of the termination hearing, the error did not affect the outcome of the case and thus, does not require reversal.
NOTES
[1] However, we note that in the recent case, In re C.L.S., 252 P.3d 556, 559 (Colo.App.2011), a division of this court held in an adoption proceeding that a default judgment terminating an alleged father's parental rights must be vacated because mother's fraudulent misrepresentations to the adoption agency and the court deprived the father of notice and an opportunity to be heard. The division held that the judgment was void and ordered that it be set aside.
[2] Although the GAL filed the motion to terminate and directed examination of witnesses at trial, the Department participated in cross-examination of witnesses and, at the conclusion of the hearing, agreed with the GAL's position on termination.
[3] In some circumstances, distinguishable from those presented here, a harmless error standard may apply in dependency and neglect cases. See, e.g., People in Interest of A.M., ___ P.3d ___, 2010 WL 5621076 (Colo.App.2010) (cert. granted 2011 WL 3276665 (Aug. 1, 2011).
[4] A trial court may terminate the parental rights of one parent but not the other. People in Interest of J.L.M., 143 P.3d 1125, 1126-27 (Colo.App. 2006).
[5] Included in the list of "majority jurisdictions" is Williams v. Bentley, 26 A.D.3d 441, 809 N.Y.S.2d 205, 206-07 (N.Y.App.Div.2006), which appears to involve the absence of mother's counsel in a child custody dispute between two parents, rather than the termination of parental rights.
[6] Lack of mental capacity of an unrepresented parent may be sufficient to require appointment of counsel as a matter of due process. Lassiter, 452 U.S. at 31, 101 S.Ct. 2153 ("complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high").
[7] The A.P. court cited an earlier case that appears to acknowledge the possibility of harmless error review for a violation of the Kentucky statutory right to counsel in parental termination proceedings, R.V. v. Commonwealth, 242 S.W.3d 669, 673 (Ky.Ct.App.2007) ("[T]he parental rights of a child may not be terminated unless that parent has been represented by counsel at every critical stage of the proceedings. This includes all critical stages of an underlying dependency proceeding in district court, unless it can be shown that such proceeding had no effect on the subsequent circuit court termination case.").
[8] Father's attorney stated at the start of the hearing that although she had included father's court-appointed expert on a supplemental witness list, she did not intend to call this witness, who was "only here as advisory."
[9] Although mother's counsel did not represent father, mother and father did not appear to have substantially conflicting interests. Mother and father were still married at the time of the termination hearing, with no plans to separate. They shared housing, so that the failure to obtain suitable housing was attributable to both.