24CA0658 Peo in Interest of GS 11-21-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0658
Jefferson County District Court No. 22JV30185
Honorable Ann Gail Meinster, Judge

The People of the State of Colorado,

Appellee,

In the Interest of G.S., a Child,

and Concerning L.C.,

Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE LUM
Freyre and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

Kimberly Sorrells, County Attorney, Claire M. Czajkowski, Assistant County Attorney, Golden, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Chelsea A. Carr, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, L.C. (mother) appeals the juvenile court's judgment allocating sole physical custody and decision-making responsibility for G.S. (the child) to J.S. (father).  We affirm.

## I.     Background

¶ 2     In October 2022, the Jefferson County Division of Children, Youth, and Families filed a petition in dependency and neglect concerning the then-six-year-old child and her older brother.  The Division alleged concerns about mother's substance use and possible child neglect.  The juvenile court granted temporary legal custody to the Division, and the child was placed with kin.  The Division later amended the petition, alleging concerns that father acquiesced to mother caring for the child despite mother's suspected substance use.

¶ 3     The parents entered no-fault admissions, and a juvenile court magistrate adjudicated the child dependent or neglected.  Father agreed to his treatment plan, but mother objected to the mental health and substance abuse components of hers, and the court set a contested dispositional hearing.  Shortly thereafter, mother's counsel withdrew.  On the day of the hearing, mother did not

1

appear on time. After waiting fifteen minutes, the court found that mother had notice of the hearing and allowed the Division to begin presenting evidence. About fifteen minutes later, mother appeared and moved for a continuance and the appointment of new counsel. After considering the other parties' objections and noting that the hearing had already begun, the court denied mother's motion for a continuance, and mother proceeded pro se. At the end of the hearing, mother stated that she did not "have a problem with . . . doing an evaluation to show [her] mental health and substance use." The court then adopted mother's treatment plan and appointed new counsel for her. Mother appealed, but a division of this court dismissed the appeal for lack of jurisdiction based on mother's failure to file a petition for review of the magistrate's adjudication order. *See People in Interest of G.S.*, (Colo. App. No. 23CA541, May 19, 2023) (unpublished order).

¶ 4 In July 2023, the child was returned home to father. Father then moved for an allocation of parental responsibilities (APR) and requested sole decision-making and to be the primary residential parent, while asking that mother receive limited, professionally supervised parenting time. The court set a contested APR hearing

but granted a continuance at mother's request for her counsel to review late-disclosed discovery.

¶ 5    On the morning of the continued hearing, mother's counsel moved for another continuance, stating that mother was unable to appear because she was very sick and on her way to the hospital. The other parties objected, and the court denied the motion, noting that mother could appear virtually if she chose to.  Mother appeared by phone and listened to some of the caseworker's cross-examination and all of father's testimony.  But shortly after mother began to testify, the phone call dropped.  The court asked mother's counsel to make an offer of proof regarding mother's testimony, but counsel declined.  The court then recessed for forty-five minutes to allow mother to rejoin the hearing.  At that point, counsel reported that although mother had been in contact with her, mother was still having technical difficulties reconnecting to the courtroom.  Again, counsel moved for a continuance, and the court denied the motion. Thereafter, the court made factual findings and granted father's APR motion.

## II. Legal Authority and Standards of Review

¶ 6 In general, parents have a constitutionally protected liberty interest in the care, custody, and management of their children. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 17. Thus, due process requires the state to provide fundamentally fair procedures in dependency and neglect proceedings. *People in Interest of J.R.M.*, 2023 COA 81, ¶ 7. At a minimum, a parent must be given adequate notice of the proceedings and an opportunity to protect their rights. *People in Interest of J.A.S.*, 160 P.3d 257, 262 (Colo. App. 2007). In assessing fairness, "the trial court [must] give primary consideration to the child's physical, mental, and emotional needs." *People in Interest of L.S.*, 2023 CO 3M, ¶ 30 (quoting *A.M.*, ¶ 20).

¶ 7 An indigent parent has a right to court-appointed counsel "at every stage of [dependency and neglect] proceedings." § 19-3-202(1), C.R.S. 2024; *see also People in Interest of L.B.*, 254 P.3d 1203, 1206 (Colo. App. 2011). But the right is statutory, not constitutional. *People in Interest of B.H.*, 2021 CO 39, ¶ 52. Thus, our supreme court has interpreted procedural due process to require the appointment of counsel "only where the parent's

4

interests are at [their] strongest, where the state's interests are at their weakest, and the risks of error are at their peak." *Id.* at ¶ 54 (quoting *C.S. v. People in Interest of I.S.*, 83 P.3d 627, 637 (Colo. 2004)).

¶ 8    In termination proceedings, procedural due process is satisfied if a parent is provided with "notice of the allegations in the termination motion, the opportunity to be heard, the opportunity to have counsel if indigent, and the opportunity to call witnesses and engage in cross examination." *People in Interest of E.B.*, 2022 CO 55, ¶ 16 (quoting *A.M.*, ¶ 18). But when the state does not seek to terminate parental rights, but rather, to award custody of a child, a parent's interests are not as strong because there is less at stake — if a parent loses custody, they nevertheless retain many rights, including the right to petition to regain custody or increase parenting time. *People in Interest of M.G.*, 128 P.3d 332, 334 (Colo. App. 2005).

¶ 9    The Colorado Children's Code directs courts to "proceed with all possible speed to a legal determination that will serve the best interests of the child." § 19-1-102(1)(c), C.R.S. 2024. Thus, when ruling on a motion to continue, the juvenile court "should balance

the need for orderly and expeditious administration of justice against the facts underlying the motion and the child's need for permanency." *People in Interest of R.J.B.*, 2021 COA 4, ¶ 11.

¶ 10    We review a juvenile court's denial of a motion to continue for an abuse of discretion. *Id.* at ¶13. A court abuses its discretion when its ruling is manifestly arbitrary, unfair, or unreasonable. *Id.* We review the underlying procedural due process claims de novo. *Id.* at ¶ 26.

### III.    Analysis

¶ 11    Mother's contends on appeal that the juvenile court granted sole decision-making and primary residential custody to father based on violations of her due process rights throughout the case. She raises two distinct arguments, and we address them separately as follows.

### A.    Right to Counsel at the Dispositional Hearing

¶ 12    Mother first argues that the juvenile court violated her right to due process at the initial dispositional hearing by denying her request for counsel and requiring her to proceed pro se. Relatedly, she argues that a division of this court "improperly dismissed" her first appeal, effectively depriving her of the right to seek meaningful

6

review of the court's initial dispositional order, which included the adoption of her treatment plan. We are not persuaded.

¶ 13    Although it is unclear whether mother asks us to review the previous division's order dismissing her first appeal, we note that we cannot do so. Rather, the proper mechanism for review of that order was the filing of a petition for rehearing or certiorari review, and mother did not file either. *See* C.A.R. 40; C.A.R. 52.

¶ 14    Next, the guardian ad litem argues that mother is precluded from presenting any arguments related to the initial dispositional hearing and order because those arguments could have been raised in mother's first appeal if she had utilized the "proper path for appeal [that] was available to her." However, we need not determine whether mother is barred, based on the dismissal of her first appeal, from arguing that her right to counsel at the initial dispositional hearing was violated. Even assuming that mother has properly raised the argument, we do not discern reversible error.

¶ 15    We agree that in general, parents have the right to counsel at a dispositional hearing. *See* § 19-3-202(1). But the dispositional hearing did not present a situation where mother's interests were at their strongest, the state's interests were at their weakest, and the

risks of error were at their peak.  *See B.H.*, ¶ 54.  Rather, the risk of error was low because dispositional orders, including the adoption of treatment plans, are interlocutory and can be changed after periodic review by the court or by motion of a party.  *See People in Interest of H.T.*, 2019 COA 72, ¶ 24.  Thus, even if the court had, as mother argues, adopted a deficient treatment plan, the court appointed new counsel shortly after the dispositional hearing, and counsel could have filed a motion to modify mother's treatment plan to cure any deficiencies.

¶ 16    Moreover, although divisions of this court have concluded that the deprivation of counsel at a termination hearing requires automatic reversal regardless of whether the error prejudiced a parent, *see, e.g.*, *People in Interest of R.D.*, 2012 COA 35, ¶ 39, we have not found, and mother has not directed us to, any legal authority requiring automatic reversal for a brief deprivation of counsel at a dispositional hearing.  In general, a parent may not obtain relief on a due process claim absent a showing of harm or prejudice.  *J.A.S.*, 160 P.3d at 262.  And mother fails to articulate how the court's denial of counsel at the initial dispositional hearing prejudiced her or ultimately affected the outcome of the APR

hearing. Although she broadly argues that the court adopted an "inappropriate treatment plan that did not reflect the treatment needs in this case," she does not explain how the treatment was inappropriate or identify any treatment needs that were not addressed. And in the year leading up to the APR hearing, mother had the opportunity to move, through counsel, for modification of her treatment plan, but she did not do so.

¶ 17　For these reasons, we are not persuaded that the juvenile court violated mother's right to fundamentally fair procedures by denying her request for counsel at the initial dispositional hearing. And even if it did, mother fails to articulate how she was prejudiced. We therefore perceive no basis for reversal.

　　　B.　Denial of the Motion to Continue the APR Hearing

¶ 18　Mother also argues that the juvenile court violated her due process rights by denying her motion to continue the APR hearing. She asserts that the court prevented her from presenting "evidence for her side of the adversarial proceeding" in violation of her right to be heard. We disagree.

¶ 19　In considering mother's motion to continue, the juvenile court noted that the APR hearing had already been continued once and

9

that mother was represented by counsel and could appear virtually. The court also found that if mother had "been in compliance, even recent compliance" with her treatment plan, it would have been more inclined to consider a continuance. Then, based on the "posture of the case," the court found that a continuance was not in the child's best interests and denied mother's motion. We conclude that the court did not abuse its discretion because it properly weighed the need for orderly and expeditious administration of justice against the facts underlying mother's motion and the child's need for permanency. *See R.J.B.,* ¶ 11.

¶ 20 Further, mother had notice of the proceedings, an opportunity to cross-examine witnesses, an opportunity to present witnesses other than herself, and the assistance of legal counsel. *See E.B.,* ¶ 16 (describing the procedural due process requirements for dependency and neglect proceedings). And, as it relates to her argument that she was deprived of the right to present her own testimony and be heard, mother does not articulate any prejudice or harm. *See J.A.S.,* 160 P.3d at 262 ("A parent may not obtain relief on a due process claim absent a showing of harm or prejudice.").

¶ 21     It is true, as mother points out, that the juvenile court stated it had to "assume" that mother was "still using" substances. But mother takes this statement out of context, and we are not persuaded that it shows prejudice based on the absence of mother's testimony. Rather, the court found, with record support, that mother did not follow orders or comply with her treatment plan and that mother "never did UAs [and] never engaged in treatment." Based on that evidence, rather than mother's lack of testimony, the court "assumed" that mother was still using substances.

¶ 22     Moreover, mother does not explain with any specificity what other evidence she would have offered if the juvenile court had granted the continuance. *See E.B.*, ¶ 22 (holding that, in a termination proceeding, a parent must establish "actual prejudice resulting from the juvenile court's denial of [a] requested continuance" to succeed on a due process claim). Indeed, when given the opportunity, mother's trial counsel declined to make any offer of proof indicating how mother would have testified. And on appeal, mother only provides broad categories of information she may have discussed if she had testified but does not give any details or explain how her testimony would have contradicted the evidence

presented to the court or led to a different result. *See id.* (where a parent fails to make any offer of proof indicating how they would have testified or what other evidence they would have offered, an appellate court is unable to conclude that the proceedings would have been affected in any appreciable way). Because the stakes of the APR hearing were lower than they would have been at a termination hearing, *see M.G.,* 128 P.3d at 334, and because mother has not established any actual prejudice based on her absence, her due process claim fails.

## IV. Disposition

¶ 23    The judgment is affirmed.

JUDGE FREYRE and JUDGE GROVE concur.