850 P.2d 211

**In the Interest of Jan Doe and John Doe, Children Under the Age of Eighteen Years.**

**STATE of Idaho, Petitioner–Respondent,**

v.

**Jane DOE, Respondent–Appellant on Appeal.**

No. 19620.

Court of Appeals of Idaho.

April 1, 1993.

Weinpel, Woolf & Combo, Idaho Falls for respondent-appellant. Stevan H. Thompson argued.

Larry EchoHawk, Atty. Gen., Ann L. Cosho, Deputy Atty. Gen., for petitioner-respondent. Ann L. Cosho argued.

SWANSTROM, Judge.

This is an appeal from an order terminating a mother's parental rights to her two children. The termination action against the mother proceeded separately from the termination proceedings against the children's father. A hearing was held, and in his findings, the magistrate determined that the mother had not "made the necessary decisions about her children." The magistrate also found that she was incapable of keeping a structured environment for the children and of protecting them from harm, which led the court to conclude that a number of conditions set forth in I.C. § 16–2005 existed to justify termination.

On appeal, the mother challenges the lower court's findings which relate to her inability to parent the children due to her mental deficiencies, contending that the state failed to meet its burden regarding proof of mental deficiency under I.C. § 16–2005(d). She contends that the termination proceeding violated the stated policy of preserving and strengthening the family, where the children had been placed in the temporary custody of the state pursuant to the Child Protective Act, with the consent of the mother, who tried to comply with the state's conditions for regaining the custody of her children. Finally, she asserts that she was denied due process through the court's failure to advise her at the outset of the termination proceeding of her right to counsel pursuant to I.C. § 16–2009. Because there is no evidence in the record indicating that the court advised the mother at the start of the termination proceedings of her right to counsel, we reverse and remand with directions to conform to due process requirements outlined in I.C. § 16–2009.

## FACTS

In July, 1989, the two minor children were taken from their home by the Idaho Falls Police Department following allegations that their father and mother had sexually abused other minor children.[1] This report of sexual abuse by the children's parents was the latest of approximately ten reports, addressing the neglect of the children's physical and medical needs, which was investigated by the Department of Health and Welfare (Health and Welfare). Fearing that these children were also in danger of being sexually abused, Health and Welfare filed a petition for legal custody and protective supervision of the children under the Child Protective Act.[2] At the time of the petition, the children were three and four years old.

The mother consented to the temporary custody of Health and Welfare and signed a stipulation granting custody for a period not to exceed one year. Under the stipulation, the mother agreed that the children could be placed in foster care, and she agreed to cooperate with Health and Welfare in implementing a case plan. The plan included receiving parenting instruction, attending support groups for battered spouses, establishing and maintaining a clean and healthy home environment for the children, regularly visiting the children as arranged by and under the supervision of Health and Welfare, and remitting $10 per month toward the support of the children. The initial stipulation, signed in August, 1989, was extended by a later stipulation and an order renewing the custody of Health and Welfare for an additional six-month period.

On January 2, 1991, near the end of the renewed period of custody, representatives of Health and Welfare and the mother appeared in the magistrate division of the district court for a hearing regarding the voluntary termination of the mother's parental rights to her two minor children. The mother, who was not represented by counsel, took the witness stand and acknowledged that she understood the nature of the proceedings. However, in response to counsel's question as to how she felt about relinquishing her rights to the children so that they might be adopted, she stated, "I don't want to do it. I don't want to lose my babies. I feel it is not fair." Based on this statement and upon further inquiry by the magistrate, it became clear that any termination of her parental rights would not be voluntary. The magistrate immediately stopped the hearing and advised that the matter would be taken up the next day, which was the date originally set for hearing.[3]

The hearing resumed on January 3, 1991, with the state presenting the testimony of the foster mother to the two children and of three social workers involved in the case from the time the children were placed in protective custody. The mother was still unrepresented by counsel, and she attempted to represent herself. The magistrate allowed her to make a statement, then examined her at some length until he determined that psychological testing of the mother should be obtained in order to learn more about her mental capacity, her ability to understand the proceedings and the effect of an injury to her head she previously had suffered in an automobile accident. The magistrate continued the hearing until the psychological report could be completed.[4] On January 22, 1991, as a result of

---

1. Charges were brought against the father with regard to his sexual abuse of these other children. He was convicted and sentenced to a term of incarceration in the Idaho State Penitentiary. No charges were filed against the mother.

2. Child Protective Act, I.C. §§ 16–1601 to –1603 (1979 & Supp.1991).

3. The record contains the petition for termination which was filed on January 4, 1991, but does not contain the notice required under I.C.

§ 16–2007. From the record submitted on appeal, we are unable to discern the specific nature of the hearing that was scheduled to take place on January 3, 1991, or the timeliness of that notice and hearing. No issue is raised on appeal as to timeliness of either the notice or the hearing.

4. Magistrate Smith indicated to the parties at the close of the January 3, 1991, hearing that he would soon be a district judge, but that he would nevertheless retain jurisdiction in this case to its completion.

the court's concerns about the mother's mental capacity and competence, the court appointed counsel for the mother in the termination proceedings. In that same order, the court appointed a guardian ad litem to represent the interests of the two minor children. The hearing was resumed on March 14 for a final day of testimony. The court interviewed the children on March 20, and thereafter entered its findings, conclusions and order terminating the mother's parental rights.

## STANDARD OF REVIEW

 On appeal, we will not disturb factual findings to terminate parental rights if the findings are supported by substantial, competent evidence. *In re Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991). When reviewing the decision of the trial court, the appellate court will draw all reasonable inferences in support of the court's judgment. *Id.* However, the mother's argument with regard to the court's findings is rendered moot by the dispositive nature of the due process argument.

## DUE PROCESS ARGUMENT

 The mother asserts that she was entitled to notice of her right to counsel in the action to terminate her parental rights and that, because she was not afforded notice and the opportunity to request or reject court-appointed counsel, she was deprived of due process. Although the magistrate decided to appoint counsel to represent the mother following his order for a psychological examination of the mother, the mother claims that this action was inadequate to guarantee her a full and fair hearing.

The question of what due process protections apply in a proceeding to terminate a parent's right to the companionship, care, custody and control of the children has been addressed in Idaho by statute. Idaho Code § 16–2009, which defines the requirements for a hearing in termination proceedings, specifically provides the parent with a right to appointed counsel:

The parent or guardian ad litem shall be notified as soon as practicable after the filing of a petition [for termination of parental rights] and prior to the start of a hearing of his [or her] right to have counsel, and if counsel is requested and the parent or guardian is financially unable to employ counsel, counsel shall be provided.

From our review of the record, however, there is no evidence that the court advised the mother of her right to counsel at the start of the termination proceedings. Admittedly, the hearing was originally scheduled as a voluntary termination; however, as soon as the court perceived that the proceedings would be involuntary, the court was obligated under I.C. § 16–2009 to inform the mother of her right to be represented.

The record of the hearing resumed on March 14, 1991, discloses that the mother's counsel's first words were an objection to the fact that a large amount of testimony had already been presented in the case, at the January 3, 1991, hearing, prior to his being appointed to represent the mother. In addition to his objection on hearsay grounds, he expressed concern that he had not had an opportunity to review the tape or transcript of all of that testimony and that he did not know what the reason was for proceeding without counsel. His objection, which the court treated as a motion to strike, was denied on the basis that counsel had neither been demanded nor requested by the mother. The court declined to strike any prior testimony from the record, stating as follows:

THE COURT: I can't see from a review of my own notes any matters that were not either subject to hearsay exception or were hearsay. I had some expert testimony, or what I view as expert testimony, but none would be based on the basis of your contest coming in, Mr. Thompson.

Just so you fully understand it was this Court who appointed counsel. Counsel was neither demanded or requested by your client. So on that basis we will go forward.

 From the court's comments, we conclude that the court interpreted the statute

to provide counsel only upon the request or demand of the mother—a request which apparently was not made in this case. However, I.C. § 16–2009 does not condition notice of the right to counsel on the parent's request. Rather, the record must show that notice was given and that thereafter the parent requested or waived counsel. From the silent record here, it seems clear that the mother was denied her rights. The court's failure to provide such notice, therefore, was error.

■ Again at the close of his case, the mother's counsel reiterated that he felt disadvantaged by not knowing what the previous, January 3, 1991, testimony was, and he requested a transcript of that hearing in order to prepare his written summation to the court.[5] The exchange between counsel and the court went as follows:

MR. THOMPSON: Your Honor, I know this may delay things, but I had felt at somewhat of a disadvantage not know[ing] what the previous testimony was, is it possible to get a transcript of the previous hearing for me to review and to incorporate into my brief to the Court?

THE COURT: Well, to be honest with you, Mr. Thompson, I think there was adequate testimony for my decision that will be presented even in the absence of that prior testimony.

MR. THOMPSON: So disregarding what happened on January 3rd—

THE COURT: Because most of that has already been rehashed and alluded to in the last two days. Basically it is the associations and the allegations which were the basis of the taking of the children.

MR. THOMPSON: Okay.

THE COURT: In fact I am trying to think if there was anything in that first hearing that was not alluded to in the last two days and I can't think of anything—

MR. THOMPSON: I guess for purposes of the record—

THE COURT: —except for [the foster mother's] testimony basically where they are now and what they are doing now.

MR. THOMPSON: So for purposes of the record is the Court saying it is not willing to consider any kind of—

THE COURT: What I am saying is that everything that was said in the first hearing was said again, just through the mouths of different people. Basically what [the foster mother] testified to is exactly what everybody else testified, the condition of the children when they were taken out of the [appellant's] home. That is basically the only thing I can think of that was in any way different going through my notes.

MR. THOMPSON: I wouldn't have anything further, Your Honor.

THE COURT: I will take this matter under advisement.

Therefore, while it is true that the mother was represented by counsel in the later hearing, the court should have begun the termination proceeding anew after counsel's appointment to represent the mother. Finding reversible error in the court's failure to timely appoint counsel for the mother, we need not decide whether any evidence from the first hearing was improperly admitted or whether the evidence from the second hearing was sufficient to form the basis of the court's order to terminate the mother's parental rights.

■ Finally, where the petition for termination alleges mental deficiency of the parent as a ground for termination under I.C. § 16–2005(d), "the court shall appoint a guardian ad litem for the alleged incompetent parent." I.C. § 16–2007. In this case where the mother's mental capacity was an issue raised in the petition, the court should have appointed a guardian ad litem to protect the rights of the mother who stood to have her children permanently taken from

---

5. The guardian ad litem, who was appointed to represent the minor children, also qualified his summation to the court because he had not been present at the January 3, 1991, hearing. As in the case of counsel representing the mother, counsel for the children did not have the benefit of either a tape or transcript of the hearing that preceded his involvement in the case. The guardian ad litem was able to determine from the testimony at the second hearing that termination was in the best interests of the children. He has not appealed.

her. It seems that the court was only presented with the petition for termination on January 4, 1991, after the proceeding changed from a voluntary to an involuntary termination, and following a full day of testimony. In spite of the confusion at the start of the first hearing, which the court tried to minimize, we are nevertheless compelled to reverse the order terminating parental rights because the mother was denied her right to counsel.

We vacate the order and remand for proceedings consistent with due process requirements as set forth in this opinion.

WALTERS, C.J., and SILAK, Acting Judge, concur.