**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40913**

| | |
|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF JOHN (2013-09) DOE. <br> _____ <br><br> JOHN DOE I and JANE DOE, <br><br>     Petitioners-Respondents, <br><br> v. <br><br> JOHN (2013-09) DOE, <br><br>     Respondent-Appellant. <br> _____ | 2013 Unpublished Opinion No. 650 <br><br> Filed: August 30, 2013 <br><br> Stephen W. Kenyon, Clerk <br><br> THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County.  Hon. George G. Hicks, Magistrate.

Order terminating parental rights, <u>affirmed</u>.

Terry S. Ratliff of Ratliff Law Offices, Chtd., Mountain Home, for appellant.

Brian B. Peterson of Hall, Friedly & Ward, Mountain Home, for respondents.
_____

GUTIERREZ, Chief Judge

John Doe (Father) appeals from the magistrate's order granting John Doe I and Jane Doe's (Stepfather and Mother or Respondents) petition for termination of Father's parental rights to his minor daughter (Child).  For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Child was born to Father and Mother in December 2007, in Albuquerque, New Mexico.  Father and Mother were never married, and Father never resided with Mother and Child after Child's birth.  Father was stationed in Virginia from July 2007 to December 2010, during which time he was deployed to Iraq for a year.  Father was adjudicated to be Child's father in an order establishing custody, timesharing, and child support that was entered in August 2008 in New

1

Mexico. In May 2009, Mother married Stepfather and moved to Mountain Home Air Force Base in Idaho. Mother provided Father with her new contact information, but Father has not had any contact with Child since, at the latest, May 2009.

In January 2012, Respondents filed a petition for termination of Father's parental rights to Child on the grounds that Father abandoned Child and that it was in Child's and Father's best interests for Father's rights to be terminated. The petition also requested Stepfather be allowed to adopt Child. Father was not represented by counsel during the initial proceedings, including at the first evidentiary hearing on the petition on May 18, 2012. In the midst of this hearing, however, the magistrate realized it neglected to advise Father that, pursuant to Idaho Code § 16-2009, Father had a right to counsel and if Father could not afford to employ counsel, counsel would be provided. After he was given this notice, Father declined counsel and the hearing proceeded. The case was continued until August 10. On August 9, Father requested a continuance, which the magistrate granted on the conditions that Father accept appointed counsel and pay for the Respondents' costs associated with the delay. Father agreed and a second hearing was held in December 2012, with Father's counsel present.

In March 2013, the magistrate issued an order terminating Father's parental rights, finding clear and convincing evidence that Father abandoned Child by failing to maintain a normal parental relationship and that it was in Child's and Father's best interests that Father's parental rights be terminated. Father now appeals the termination of his parental rights.

## II.

## ANALYSIS

### A. Appointment of Counsel

Father contends the magistrate erred by failing to notify him of his right to counsel upon initiation of the proceedings pursuant to Idaho Code § 16-2009:

> The parent . . . shall be notified as soon as practicable after the filing of a petition and prior to the start of a hearing of his right to have counsel, and if counsel is requested and the parent . . . is financially unable to employ counsel, counsel shall be provided.

Father argues the magistrate's notification of this right mid-way through the testimony of the first witness at the second hearing on May 18, was too late and resulted in a violation of his due process right to counsel. The Respondents do not dispute that the magistrate did not inform

2

Father of his right to counsel until the May hearing, but contend that, for various reasons, Father's due process rights were not violated.[1]

At the May 18 hearing, while Father was in the midst of his cross-examination of the first witness, Mother, the magistrate called a recess to consider another issue. Upon resumption of the hearing the magistrate indicated it reviewed the applicable statute during the break and realized that pursuant to section 16-2009, it mistakenly failed, prior to commencement of the hearing, to advise Father of his right to counsel. The magistrate then asked how Father wished to proceed upon being advised of that fact. Father indicated he attempted to obtain representation, but could not afford it and was told after he contacted various parties, including the "Court," that he could not be appointed one or the party could not assist him. The following exchange occurred:

> [Magistrate]: [A]s I read the statute, it's my duty to inform you of your right to have an attorney and it's my duty and responsibility to let you know that if you cannot afford an attorney the Court will appoint one for you at public expense. Knowing that information, I will once again ask you do you wish to have an attorney represent you? Do you want to think about that and then let me know or do you have an answer for me at this time?
> [Father]: Would this have to be continued if I get an attorney or if you have to appoint an attorney?
> [Magistrate]: Yes, I can't pull an attorney in here.

---

[1] The Respondents argue Father was given the requisite notice in their "Notice of Hearing Re: Petition for Termination of Parental Rights and for Adoption," served upon Father fifty days before the hearing, which indicated:

> YOU ARE FURTHER NOTIFIED that you have the right to have counsel represent you in this matter, and if counsel is requested by you and you are financially unable to employ counsel, counsel shall be provided for you.

We need not reach the issue because we find it dispositive below that Father waived his right to counsel; however, we express skepticism that notification from the opposing party, as opposed to the magistrate, would satisfy the requirement of the statute. The context of Idaho Code § 16-2009 is the procedural responsibilities of the *magistrate*. In addition, the circumstances here illustrate the problems that would accompany allowing notice from the opposing party to suffice in notifying the parent of such an essential right. At one of the hearings, Father told the magistrate he contacted Respondents' counsel to assist him in obtaining counsel, but counsel indicated he could not assist Father in doing so because he represented the Respondents. Requiring that the magistrate provide the requisite notice ensures that the provision in the statute requiring appointment of counsel if requested by an indigent parent is carried out.

. . . .

[C]learly there would be a need to continue the matter. I mean we're talking about a matter that . . . if the Court rules against you that's pretty permanent. . . . The matter would be set over and [we would] give an opportunity for an attorney to get up to speed. We would have to reset it sometime convenient to that attorney and to [Respondents' counsel] and to the Court. So, matters would be held in abeyance until that time. This Court would also-- probably . . . have to give consideration to the fact that evidence has been presented in Court in a situation where you had not been advised of that right and so, this Court may very well be in a position where it would have to recuse itself.

. . . .

[Father]: I really don't want that. . . .

[Magistrate]: Well, I've created this mess myself . . . not you.

[Father]: I understand.

[Magistrate]: But I don't want you or anyone else to . . . suffer adverse consequences because of it.

[Father]: Well--I don't know--I don't mean to--step on you but I have annual training next month, the 9th through the 29th, so . . . it would be kind of difficult to even do that.

. . . .

[Magistrate]: [W]hatever is done, it's not going to be like next week that we come back to Court or next month, it might be a while before we come back to Court for a hearing. . . . I realize it's very disappointing to be in this position and to learn this at this juncture. So, if . . . we were to have another hearing, Madame Clerk, when would that be if it were to be a half day? . . .

. . . .

[Court Clerk]: The soonest we have a half day available is August 10th.

. . . .

[Father]: I would like it before. I think I owe [Mother] that, and [Respondents' counsel] and myself. I . . . just want to get this over and done with. I don't want to wait a few more months and wait for the outcome.

[Magistrate]: Okay, so, at this time, it's my understanding . . . that you've been advised that you could have an attorney appointed for you at public expense and you've declined to have an attorney appointed for you and you wish to go forward. Is that correct?

[Father]: Yes.

[Magistrate]: [D]o you understand the gravity of the fact that you could very well be waiving any opportunity to appeal the decision based upon the fact that you don't have an attorney if consequences are adverse to you?

[Father]: Yes.

4

> [Magistrate]: Okay, in other words, you've chosen to go forward without an attorney, despite . . . the fact that I told you you could have one--
>
> . . . .
>
> --without paying for it. If in the end I rule against you . . . it seems to me that it would not be a fair way to appeal the matter saying well I'm appealing because I didn't have an attorney. Do you understand what I'm saying?
>
> [Father]: Yes.

The hearing on May 18 proceeded with the Respondents finishing their case and resting. The magistrate then gave Father the opportunity to proceed with the case or to continue the hearing until August 10, 2012. Father chose the latter. On August 9, Father filed a motion to continue, which the magistrate granted, with the conditions that Father allow the magistrate to appoint him counsel and that Father pay Respondents expenses for the delay. Father agreed, was appointed counsel, and the hearing was continued until September 20, a date chosen to accommodate Stepfather who was deploying overseas in November. The magistrate also appointed a guardian ad litem for Child. Upon the Respondents' counsel's question as to whether he should "start over" in presenting evidence at the next hearing, the magistrate suggested to "summarize" the testimony already on the record through additional testimony in order to give Father's counsel and the guardian ad litem "an opportunity to cross examine." The hearing was later rescheduled, with Father's consent, to December, when Stepfather was not available to testify. At the final hearing, the parties agreed that Father would put on his case and then the Respondents would re-call its witnesses, which would give the Respondents the opportunity to address any new issues raised by Father or that had arisen since the last hearing. Father would then be allowed to cross-examine those witnesses. Father did not object to Stepfather not being available for cross-examination.

This Court emphasized the importance of notifying a parent of their right to counsel at the commencement of termination proceedings and of representation being present throughout the critical stages of the proceedings in *State v. Doe*, 123 Idaho 562, 565-66, 850 P.2d 211, 214-15 (Ct. App. 1993). There, representatives from the Department of Health and Welfare and the mother appeared at a hearing regarding the voluntary termination of the mother's parental rights. However, upon the magistrate's questioning of the mother, it became apparent that any termination of her rights would not be voluntary. The hearing was immediately stopped and resumed the next day, with the mother still unrepresented by counsel. The mother attempted to

represent herself, but after the magistrate examined her at some length, it determined psychological testing of the mother should be obtained. The hearing was continued until receipt of the psychological report. As a result of the magistrate's concern as to the mother's mental capacity and competence, the court appointed counsel for the mother. After a final day of testimony, the magistrate ordered that the mother's parental rights be terminated.

On appeal, the mother contended her due process rights were violated by the magistrate's failure to give notice of her right to counsel and the magistrate's late appointment of counsel was inadequate to guarantee her a full and fair hearing. Noting the requirements of section 16-2009, we indicated there was no evidence in the record that the magistrate advised the mother of her right to counsel at the start of the termination proceedings, which it was obligated to do immediately after it became apparent the termination would be involuntary. *Doe*, 123 Idaho at 565, 850 P.2d at 214. We then noted that at the first hearing where the mother was represented, her appointed counsel expressed concern that he did not have the opportunity to review the testimony presented before he was appointed. The magistrate treated this as a motion to strike, which it denied on the basis the mother neither demanded nor requested counsel. Noting the magistrate was mistaken in holding the mother was required to have requested counsel, we held the magistrate's failure to provide the mother notice pursuant to section 16-2009 was erroneous. *Doe*, 123 Idaho at 565-66, 850 P.2d at 214-15.

We also held the magistrate's failure to timely appoint counsel constituted reversible error, and thus, we did not even reach the issue of whether any evidence from the first hearing was improperly admitted or the merits of the magistrate's decision to terminate the mother's parental rights. *Id.* at 566, 850 P.2d at 215. In doing so, we noted that at the close of the case, the mother's counsel reiterated that he felt disadvantaged by not knowing the content of the testimony from the previous hearing, but the magistrate dismissed this concern upon indicating, "everything that was said in the first hearing was said again, just through the mouths of different people." *Id.* This Court concluded that although it was true the mother was represented by counsel in the second hearing, "the court should have begun the termination proceeding anew after counsel's appointment to represent the mother." *Id.*

The case we address here, however, has an important distinguishing characteristic: the magistrate recognized its error, gave Father the requisite (admittedly late) notice, offered Father counsel and a continuation of the proceedings for counsel to get up to speed, and indicated a new

6

magistrate may be required to essentially start the proceedings over--offerings Father clearly understood, but just as clearly rejected. Although Idaho courts have not addressed the validity of a parent's waiver of counsel in termination proceedings, it is clear the statute provides for that eventuality, by only requiring appointment of counsel if, after notice is given, the parent *requests* counsel and cannot afford it.

In assessing a parent's waiver of counsel, the standard applicable in the criminal context is instructive:

> To waive counsel, defendant must "knowingly and intelligently forgo" the benefits of counsel and "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." [*Faretta v. California*, 422 U.S. 806, 835 (1975)] (internal quotations omitted). Idaho also requires that waiver be effected voluntarily. *State v. Dalrymple*, 144 Idaho 628, 167 P.3d 765 (2007), *State v. Lovelace*, 140 Idaho 53, 64, 90 P.3d 278, 289 (2003). Additionally, Idaho mandates that the defendant "be aware of the nature of the charges filed against him and the possible penalties flowing from those charges, as well as the dangers and disadvantages of self-representation." [*Lovelace*, 140 Idaho at 64, 90 P.3d at 289]. The district court must be satisfied that the defendant "understood the inherent risks involved in waiving the right to counsel." *Dalrymple*, [144 Idaho at 771, 167 P.3d at 634].

*State v. Anderson*, 144 Idaho 743, 746, 170 P.3d 886, 889 (2007). As indicated above, the record indicates Father's waiver of counsel when offered by the magistrate on May 18 was intelligent and knowing. Father does not argue otherwise. The magistrate repeatedly made sure Father knew applicable considerations and explicitly advised Father of the "gravity" of the possibility that Father could be waiving the right to appeal his lack of counsel, should the magistrate terminate his parental rights. The magistrate also expressed, several times, a willingness to continue the proceedings to allow new counsel to get up to speed, as well as acknowledged it was possible it would be necessary to restart the case, with a different magistrate sitting, because the magistrate failed to give Father the requisite notice. Despite this information, Father articulated his desire to proceed without counsel, citing his wish to be fair to the parties and his desire to "get this over and done with." Father was clearly notified of his right to counsel and of the dangers of proceeding without counsel, but waived this right in a knowing and intelligent manner; therefore, there was no due process violation requiring reversal.

7

**B.      Termination of Parental Rights**

Father contends there was not clear and convincing evidence to support the magistrate's finding that Father abandoned Child and contends the magistrate abused its discretion in determining it was in Father's and Child's best interests to terminate Father's parental rights. Parental rights are a fundamental liberty interest, constitutionally protected by the Fourteenth Amendment. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). In a proceeding to terminate a parent-child relationship, the Due Process Clause mandates that grounds for termination must be shown by clear and convincing evidence. *Dep't of Health and Welfare v. Roe*, 139 Idaho 18, 21, 72 P.3d 858, 861 (2003); *In re Doe*, 130 Idaho 47, 53, 936 P.2d 690, 696 (Ct. App. 1997); *In re Cheatwood*, 108 Idaho 218, 219, 697 P.2d 1232, 1233 (Ct. App. 1985). When the trial court finds that the grounds as defined by statute, which are alleged for termination, are established by clear and convincing evidence, those findings will not be overturned on appeal unless they are clearly erroneous. *In re Crum*, 111 Idaho 407, 408, 725 P.2d 112, 113 (1986); *Doe*, 130 Idaho at 53, 936 P.2d at 696. Clear error, in turn, will not be deemed to exist where the findings are supported by substantial and competent, albeit conflicting evidence. *Crum*, 111 Idaho at 408, 725 P.2d at 113; *Doe*, 130 Idaho at 53, 936 P.2d at 696. It is for the trial court to determine whether clear and convincing evidence supported the termination of parental rights; our task on this appeal is to determine whether the trial court's finding is clearly erroneous. *Crum*, 111 Idaho at 408, 725 P.2d at 113; *Doe*, 130 Idaho at 53, 936 P.2d at 696. Furthermore, in reviewing such findings, this Court will indulge all reasonable inferences in support of the trial court's judgment. *In re Aragon*, 120 Idaho 606, 608, 818 P.2d 310, 312 (1991); *Doe*, 130 Idaho at 53, 936 P.2d at 696. This Court gives deference to the trial court's findings since the magistrate is in a better position to observe the witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge the character of the parties. *Dep't of Health and Welfare v. Doe*, 145 Idaho 662, 664, 182 P.3d 1196, 1198 (2008).

Idaho Code § 16-2005 permits the Department to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period which will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time during

the child's minority. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. As the text indicates, this requires two findings: first, that one of the statutory bases for termination is shown and, second, that termination of parental rights is in the best interests of the child. *Doe v. Doe*, 149 Idaho 392, 396, 234 P.3d 716, 720 (2010); *Aragon*, 120 Idaho at 611, 818 P.2d at 315.

Initially, we note that Father misstates the standard of review applicable to the magistrate's best interests findings. As discussed above, we determine whether there was clear and convincing evidence to support these findings, not whether such findings were an abuse of discretion. *See Roe*, 139 Idaho at 21, 72 P.3d at 861. Also, we need not address the magistrate's finding that termination was in Father's best interests, which Father challenges on appeal. Section 16-2005 allows for termination under several circumstances. A clear basis for the termination in this case was subsection (1) of section 16-2005, which allows for termination where it is in the best interests of the child *and* one of several conditions exists--in this case, abandonment. Subsection (3) of section 16-2005 also provides for termination where termination is found to be in the best interests of the parent and child. This, however, is an entirely distinct ground for termination than that contained in subsection (1). *See State v. Doe*, 143 Idaho 383, 387, 146 P.3d 649, 653 (2006) (noting that termination based on best interests of the parent is a distinct category from the other categories predicated upon particular conduct or status of the parent such as abandonment, neglect, etc.).[2] Because, as we find below, termination under subsection (1) was not erroneous, we need not reach the merits of the alternate basis for termination under subsection (3).

### a.     Abandonment

Father contends the magistrate's finding that he abandoned Child was not supported by clear and convincing evidence because Mother made "concerted efforts" to prevent Father from having contact with Child. Abandonment is defined by Idaho Code § 16-2002 which states, in relevant part:

---

[2]     Since *State v. Doe*, 143 Idaho 383, 146 P.3d 649 (2006) was decided, Idaho Code § 16-2005 has been amended to make this distinction even more clear. Under the version of the statute considered in *Doe*, subsection (1)(e) allowed for termination where both the best interests of the child and best interests of the parent were served. A 2005 amendment severed consideration of the best interests of the parent from subsection (1) and moved it to stand alone as subsection (3). 2005 Idaho Sess. Laws ch. 391, § 49.

"Abandoned" means the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. Failure of the parent to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment under this section . . . .

I.C. § 16-2002(5). In order to "willfully" fail to maintain a normal parental relationship, the parent must have the ability to maintain it and choose not do so. *Doe I v. Doe II*, 148 Idaho 713, 716, 228 P.3d 980, 983 (2010); *Doe v. Doe*, 152 Idaho 77, 79, 266 P.3d 1182, 1184 (Ct. App. 2011). There is no universal standard for defining a "normal parental relationship"; whether such a relationship exists depends on the circumstances of each case. *Doe I*, 148 Idaho at 715, 228 P.3d at 982; *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006); *Doe*, 152 Idaho at 79, 266 P.3d at 1184.

The petitioner holds and retains the burden of persuasion to show that abandonment has occurred. *Doe*, 149 Idaho at 396, 234 P.3d at 720; *Doe*, 143 Idaho at 192, 141 P.3d at 1061. This includes a showing that the respondent parent is without just cause for not maintaining a normal relationship with the child. *Doe*, 149 Idaho at 396, 234 P.3d at 720; *Doe*, 143 Idaho at 192, 141 P.3d at 1061. If the petitioning party makes the prima facie case, then the respondent parent holds the burden of production to present evidence of just cause. *Doe*, 149 Idaho at 396, 234 P.3d at 720; *Doe*, 143 Idaho at 192, 141 P.3d at 1061. If the trier of fact finds there are no valid defenses or "just causes," then the petitioning party has met the burden of persuasion. *Doe*, 149 Idaho at 396, 234 P.3d at 720; *Doe*, 143 Idaho at 192, 141 P.3d at 1061.

Here, the magistrate found Father failed to maintain a normal parental relationship with Child by "failing to maintain any personal contact with the minor child for a period of over three (3) years and by failing to pay child support for the minor child for over one year." In support of this conclusion, the magistrate found that "since the January 2009 visit, [Father] has never seen his daughter in person again. [He] has neither seen, nor spoken to [Child] since, at the very latest, May of 2009, which was more than three and a half years ago." In addition, the magistrate found Father had not paid any support for Child from December 22, 2011, to the day of the final hearing, December 21, 2012. Father does not dispute these findings on appeal, but focuses on his contention that his failure to maintain contact with Child was justified by Mother's actions in keeping him from Child. The magistrate explicitly rejected this assertion:

[Father] had the ability to establish his relationship with [Child] and failed to do so without any just cause.

10

The court finds that his excuse that [Mother] would not allow him to see [Child] is not persuasive. [Mother] did nothing to prevent [Father] from pursuing and establishing timesharing [of custody]. . . .

The argument that [Father] did not know where [Mother] was located is without merit. Whether [Father] actually knew or did not know exactly where [Mother] lived is irrelevant. What is relevant is that [Father] was able to serve [Mother] with court documents in September of 2009 at her actual address, which is the same address that she had until May of 2012.

The magistrate's above findings are supported by clear and convincing evidence in the record. Child was born in New Mexico on December 4, 2007, resided with Mother since birth, and never lived with Father, who was stationed in Virginia Beach, Virginia from July 2007 to December 2010 and was deployed to Iraq from July 2008 to July 2009. At no point did Mother and Father ever live together after Child was born. In early 2008, Father met Child for the first time when Mother brought Child to the airport when Father was visiting New Mexico. In March 2008, Father cooperated with Mother to add his name to the birth certificate. In August 2008, Mother and Father stipulated to the entry of an "Order Establishing Custody, Timesharing and Child Support." The order gave Mother sole legal custody and primary physical custody of Child, but stated that timesharing should be established once Father returned from overseas. It placed the burden on Father to petition the court to establish timesharing. From the time Father deployed until the end of 2008, Mother sent photographs and videos of Child to Father, in addition to emailing, writing letters, sending packages, and talking to him on the phone and via Skype. In January 2009, while Father was home for ten days, Mother again met him at the airport with Child and facilitated several subsequent visits between the two.

Mother informed Father in either March or May of 2009 that she and Child were moving to Mountain Home Air Force Base, Idaho, with Stepfather. Father called Mother on Easter 2009, but did not speak to Child. It was disputed as to when the last phone call between Mother and Father occurred, with the latest date being May 2009. When Mother and Child moved to Idaho in late June 2009, Mother provided Father with her new address and home telephone number via e-mail.

On September 1, 2009, Father filed an "Emergency Motion for Change of Custody and Timesharing" in New Mexico. The motion and notice thereof were served upon Mother at her residence on Mountain Home Air Force Base. A paralegal representing Father called Stepfather at work in the fall of 2009 and Stepfather gave the paralegal his address and home phone

11

number. Father also contacted Stepfather's unit via telephone during the summer of 2009 and gave the unit information to his attorney. Father testified at the hearing that he had Mother's address while his motion was pending in the fall and winter of 2009.

Father stipulated to dismiss his motion for custody due to lack of jurisdiction. He was told to file in Idaho, which he never did. Father did successfully file a motion in New Mexico to reduce his child support obligation, which was granted on December 12, 2011. Father again obtained Mother's address during this proceeding from the hearing officer.

Three times over the course of Child's life, Father called the police and requested their assistance to "exercise his court ordered visitation" by visiting Mother's father's residence in New Mexico. It was undisputed that the third time occurred on Christmas Eve of 2011, when Mother was present at the house with Child and did not allow Father to see her. Other than these attempts to demand visitation, the only other effort Father made to contact Child after his emergency motion was dismissed was to email Mother at an address he knew was invalid.

The magistrate's finding that Mother did not interfere with Father establishing contact with Child is supported by clear and competent evidence, including Mother's willingness to facilitate visits early in Child's life, the fact she sent Father correspondence regarding Child while he was in Iraq, and that she told Father she was moving and provided him with her Idaho address and phone number. Mother also did not take any action in the court system of either New Mexico or Idaho to limit Father's parental rights until the petition for termination was filed in January 2012. Father, on the other hand, never petitioned any court to establish timesharing after he agreed to dismissal of his emergency petition in New Mexico due to lack of jurisdiction. His only attempts to see Child after returning from Iraq were to demand visitation, which he had not legally petitioned for. In addition, there was ample evidence, much of it undisputed by Father, that he knew the whereabouts of Mother and Child in Idaho and, thus, could have contacted them. Mother testified she gave him her contact information and Stepfather gave the information to a paralegal working for Father. It is apparent Father had this information because he was able to successfully serve Mother with notice of the emergency motion in late 2009. In addition, Father showed a capacity to navigate the court system as he successfully petitioned for reduction of his child support obligation in late 2011. Based on these facts, the magistrate's finding, that Father's failure to maintain a normal parental relationship with Child was not justified by Mother's actions, is not clearly erroneous.

**b.      Best Interests of Child**

Father also contests the magistrate's finding that termination of his parental rights was in the best interests of Child. In coming to this conclusion, the magistrate stated:

> The evidence at trial has been that [Child] knows no other father figure than [Stepfather]. [Stepfather] has been a part of her life since [Child] was 15 months and lived with her since she was approximately 18 months.
>      [Child] has a younger sister that is around two years of age, who is the daughter of [Mother and Stepfather]. [Child] has bonded with her as her sister. [Child] lives and believes that she too is a . . . part of the family as much as her younger sister. [Child] is healthy, happy and secure. [Mother] is also expecting another child in July of 2013, who will be a sibling to [Child], and a part of [Child's] life.
>      [Child] also has a healthy relationship with [Mother's] parents . . . .
> . . . .
> [Stepfather] has established a father-child bond with [Child]. [Stepfather] is the only father that she knows. The value of the permanency and stability that this termination and adoption would mean to [Child] and her life growing up is immeasurable.

The magistrate also likened this case to two recent cases, *Doe*, 149 Idaho 392, 234 P.3d 716 and *Doe*, 152 Idaho 77, 266 P.3d 1182, which both held in similar circumstances that it was in the best interests of the child to terminate the biological father's rights, with one of the main reasons in both cases being that the child had bonded with the stepfather and the biological father had not been a part of the child's life.

Father contends the magistrate erred in finding it was in Child's best interests to terminate his parental rights based "solely" on Child's positive relationship with Stepfather. Father is mistaken that this was the sole basis for the magistrate's decision. Although the magistrate did consider Child's bond with Stepfather, and properly so, its determination was based on several factors:

> 13. [Child] has bonded with Step-Father, believes that [Stepfather] is her father, and that she knows no other person as her father. [Stepfather] has raised her since she was around 18 months old. [Child] is stable and happy and [Stepfather] participates in all her activities, and she runs to him and is excited to see him after work. [Stepfather] is a major influence in [Child's] life.
>
> 14. [Father] is presently unemployed, has dropped out of school and is living with his father in Albuquerque, New Mexico.
>
> 15. It would be detrimental to [Child] to introduce [Father] into [Child's] life at this time. This was undisputed by [Father]. [Father] did testify that he did not

13

believe that terminating his rights was in [Child's] best interest, but his reasons for this were purely myopic. For example, when asked why it was not in her best interest, [Father] stated because he was her father and that he loved her and that she was his world. [Father] did not say anything else about why it was not in her best interest.

Both Mother, Stepfather, and Child's maternal grandfather testified they believed introducing Father to Child's stable life at this point (after approximately four years) would be detrimental to Child because it would confuse her.

We agree with the magistrate that the circumstances here are analogous to the relatively recent cases where both the Idaho Supreme Court and this Court held the magistrate did not err in finding it to be in the best interests of the child involved to terminate the biological father's parental rights. In *Doe*, 149 Idaho 392, 234 P.3d 716, the biological father was never a part of the child's life and there was testimony from a social worker at trial that the child and the stepfather shared a "healthy father-daughter relationship" and that the stepfather's adoption of the child would "provide[] a sense of permanency for the child." *Id*. at 398, 234 P.3d at 722. Noting that the interests in affording the child a stable home-life and stable parental relationship were "significant," the Supreme Court affirmed the magistrate's determination that termination of the father's parental rights was in the best interests of the child. *Id*.

Similarly in *Doe*, 152 Idaho 77, 266 P.3d 1182, the biological father argued the magistrate erred in finding it was in the children's best interests to terminate his parental rights and allow the stepfather to adopt them. We disagreed:

> As the magistrate court noted, the children had created a father-child bond with Stepfather. In fact, the youngest child, Jane Doe, does not even know Father due to his lack of contact with her. . . .
> . . . .
> It was shown at trial that Father's presence in the children's lives is detrimental due to its irregular, unpredictable, and unstable nature and due to the things that Father says to them. In contrast, Mother and Stepfather have provided emotional and financial support and stability for many years, and Stepfather has been the children's father figure since 2006. Contrary to Father's assertion, it is not necessary that there be evidence of abuse or greater detriment to the children's well-being in order to justify a finding that termination is in the children's best interests. The magistrate court's holding that the termination of Father's parental rights was in the children's best interests is sufficiently supported by trial evidence.

*Id*. at 82, 266 P.3d at 1186.

As Father admitted at trial, he does not know Child and Child does not know him. This fact, in addition to the facts found by the magistrate, including Child's close bond with Stepfather and Father's employment and financial instability, make clear the permanency and stability in Child's life that would follow from terminating Father's parental rights is significant. The magistrate did not err in determining it was in Child's best interests for Father's parental rights to be terminated.

## C.     Attorneys' Fees and Costs

Respondents request attorneys' fees and costs on appeal. The entirety of their request in the brief consists of one sentence: "Respondents should receive their attorney fees and costs on appeal pursuant to I.C. § 12-121, I.R.C.P. 11, I.R.C.P. 54(d), I.R.C.P. 54(e), I.A.R. 40, and I.A.R. 41." It is well-settled, however, that the party seeking fees must "support the claim with argument *as well as* authority." *Bailey v. Bailey*, 153 Idaho 526, 532, 284 P.3d 970, 976 (2012) (emphasis added) (citing *Evans v. Sayler*, 151 Idaho 223, 228, 254 P.3d 1219, 1224 (2011)). Merely requesting fees and citing to a string of authorities does not constitute supporting a request with argument. *See Bailey*, 153 Idaho at 532, 284 P.3d at 976 (holding that a statement in the brief that if the party prevails, it "should be awarded his attorney's fees on appeal, pursuant to § 12-121 I.C." did not satisfy the requirement that a request be supported by argument). Accordingly, we deny Respondents' request for attorney fees. Pursuant to Idaho Appellat Rule 40, costs are awarded as a matter of course to the Respondents.

## III.

## CONCLUSION

Father has not shown his due process right to counsel was denied by the magistrate's failure to timely notify him of such right because Father knowingly and intelligently waived his right to counsel when he was given the requisite notification. The magistrate's determination that Father abandoned Child and that it was in Child's best interests for Father's parental rights to be terminated is supported by clear and convincing evidence. Respondents' request for attorney fees is denied, but they are awarded costs. The magistrate's order terminating Father's parental rights to Child is affirmed.

Judge LANSING and Judge GRATTON **CONCUR.**